three or more stories in height," and leaves the question as to who shall construct them to the determination of the interested parties in the first instance, subject to the power of the court to construe the provision in its relation to practical questions.

The word "factory" is a contraction of "manufactory," which is defined to be a building or collection of buildings appropriated to the manufacture of goods. 12 Am. & Eng. Ency. of Law, 705. It is the appropriation of a building to the manufacture of goods which constitutes it a factory, and it is only when a building is thus appropriated, and it is more than two stories in height, that it comes within the provisions of the law. The owner of a building three or more stories in height owes no duty to place fire escapes upon it so long as it is a mere building; it is only when it becomes a factory that this duty arises. When a corporation like the Brooklyn Chair Company leases a building from the owner it is merely a building; it becomes a factory only when the lessee places machinery therein and devotes it to the manufacture of goods. It is the lessee who, by his own act, transforms the building into a factory, and then the duty arises to provide fire escapes; and whatever we might be disposed to hold in so far as this duty related to the owner of the building, it is clear, we believe, that the lessee, who is in possession for the very purpose of transforming a mere building into a factory, giving rise to the duty, cannot be held to be free from the obligation imposed by the statute.

The defendant who is here appealing criticises the charge of the learned court; but we are of the opinion that the charge is not open to objection by the defendant, that it was fully as liberal as there was any justification for, and that the verdict of the jury should not be disturbed.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

ST. CYR v. SOTHERN et al.

(Supreme Court, Appellate Division, Second Department. October 7, 1910.)

CONTRACTS (§ 217*)—CONSTRUCTION—OPTION TO TERMINATE.

Plaintiff agreed to give defendants the exclusive right to produce a play in America for not exceeding five years from the first public production, a specific royalty to be paid and $1,000 to be paid on execution of the agreement, to be applied on the royalty if it should exceed such sum. Defendants agreed that they would produce the play within one year, and would give 30 performances during that time, and that if they did not produce the play within one year they would forfeit the deposit, and that during the term of the contract the minimum number of public performances to be given in each season should equal the number of weeks in such season. Held, that the contract bound defendants for one year only, the right conferred being optional after that time, and the $1,000 was intended as liquidated damages for breach of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1006–1009; Dec. Dig. § 217.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term.

Action by Dirce St. Cyr against Edward H. Sothern and another. From a judgment of dismissal, and a certain order, plaintiff appeals. Affirmed.

The opinion of Clark, J., at Trial Term was as follows:

This action is brought by the plaintiff to recover from the defendants $7,500 and interest for breach of contract. So much of the contract as, in our opinion, affects the controversy reads as follows:

"Memorandum of agreement, between Dirce St. Cyr. * * * party of the first part, and Edward H. Sothern * * * and Julia Marlowe, * * * parties of the second part. Whereas * * *: Now, therefore, in consideration of the sum of one dollar by each of the parties hereto to the other in hand paid, the receipt of which is hereby acknowledged, and in further consideration of the mutual covenants and conditions hereinafter contained, the parties hereto agree as follows:

"First. The party of the first part agrees to give and grant, and does hereby give and grant, to the parties of the second part the exclusive right to act and produce the play 'La Figlia di Jorio,' by Gabriele d'Annunzio, in the United States of America. * * *

"Second. The party of the first part hereto hereby covenants and agrees with the parties of the second part hereto that they shall have the exclusive rights conferred by paragraph 'First' hereinabove for a term not exceeding five (5) years from the date of the first public production of said play, upon the terms and conditions hereinafter stated, to wit: Upon the payment of five (5) per cent. of the gross receipts of each and every public production of said play, the sum of one thousand dollars ($1,000), to be paid on the date of the exchange of the signed counterparts of this agreement; it being understood that said sum of one thousand dollars ($1,000) shall be applied upon the said royalty of five per cent. of the gross receipts, in case the said royalty shall exceed this sum.

"Third. The parties of the second part hereby further agree that they will pay to the party of the first part a minimum royalty of fifty dollars ($50) for each and every public performance of said play that shall be given under this agreement.

"Fourth. The parties of the second part further agree that they will make the said play one of their repertoire, and that they will produce it in a manner which they deem adequate and appropriate, within one year from the date of these presents, and that during said year they will give 'thirty (as stipulated) public performances of said play, during each theatrical season. * * * *'

"Fifth. The said parties of the second part further agree that they will account to the party of the first part at least once every three months, and in said accounting that they will render to the said party of the first part a true and accurate statement of the number of performances given by them within the three months last past, and showing the gross receipts of each performance, and will pay to said party of the first part whatever sum will be due for said period under this agreement.

"Sixth. The parties of the second part hereby further agree that, in case they do not produce the said play within a period of one (1) year from the date thereof, they will forfeit the aforesaid sum of one thousand dollars ($1,000) deposited with the party of the first part as aforesaid.

"Seventh. The parties of the second part further agree that during the term of this agreement the minimum number of public performances of said play to be given in each season hereunder shall equal the number of weeks in said season; that is to say, that the royalty paid shall at least equal the minimum royalty guaranteed per night for an average of one night each week during the season.

"Eighth. The parties of the second part shall have the right to renew this agreement for an additional period of five (5) years upon the terms to be agreed upon. And it is hereby mutually agreed that this contract or the rights hereunder may be assigned by either of the parties hereto, upon no-

tice to the other, and that it shall bind and inure to the benefit of the executors, administrators, and personal representatives of both parties. * * *"

The main contention of the learned counsel for the plaintiff is stated in his brief as follows: "In the event the court should hold that the contract was but for one year, then the motion to dismiss the complaint should be sustained; and (but) if the court should hold that the contract was to run for five years, then the court should direct a judgment for the plaintiff for the sum of $1,500 a year for five years, or for $7,500."

Any preliminary inquiry whether the contract runs for five years, or for one year, or confers an option merely, is profitless. The real condition here is an action pending for damages against the defendants for alleged breaches by them of the contract. Therefore the important preliminary question is: What did the defendants covenant to do in the contract? Of such covenants the contract expressed but three: First, to deposit $1,000 with the plaintiff upon the exchange of counterparts; secondly, to give 30 performances of the play within the year ending April 1, 1907; and, thirdly, to pay a royalty for each of said nights. Of these three duties the defendants have performed the first, but failed to perform the second. Have they fulfilled the third?

The answer will be most quickly reached by recurring to April 1, 1906, the date of the contract. At that time there had been no breach by the defendants, as they had paid the stipulated $1,000. The only breaches on the part of the defendants that could be anticipated were nonperformance of the play within the defined year and nonpayment of royalties.

Paragraph "Sixth" of the contract seems to have been inserted to cover these two points, namely, the breach and the damages. Until we have read this paragraph, the $1,000 is legally in nubibus. It was not part of the expressed consideration. Although the plaintiff had received it, it was not her absolute property; although the defendants had parted with it, they might still get the benefit of it, in case the royalties should exceed its amount. Only upon facing the contingency of the failure of the defendants to produce the play within the year was the $1,000 finally given a status, to wit, a forfeit from the defendants to the plaintiff. That this forfeiture was not intended to act as liquidated damages can be argued only upon the theory that the contract placed upon the defendants obligations outlasting one year, which is not the fact.

After the first year, at least, the rights conferred upon the defendants were optional, and, even had the defendants produced the play for the one year and paid all royalties due therefor, the contract puts upon them no obligation ever to produce the play again. No action by the plaintiff for a mandatory injunction after the first year could have prevailed, because there is nothing in the contract from which a complaint in such an action could be framed.

Having decided the case on the merits, I have not considered the defense of another action pending, although that point was urged and argued upon the trial, and received full attention in the briefs.

Verdict is directed in favor of the defendants, dismissing the complaint upon the merits, with costs.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

I. R. Oeland, for appellant.
J. Langdon Ward, for respondents.

PER CURIAM. Judgment and order affirmed, with costs, on the opinion of Mr. Justice Clark at Trial Term.